[Civ. No. 12574. First Dist., Div. One. Oct. 23, 1944.]

Estate of HARRY COHEN, Deceased. TOBA LEAH FORE-MAN, Appellant, v. J. L. GWIRTZ, Respondent.

. I. M. Peckham, Isaac S. Grossman and John B. Ehlen for Appellant.

Conrad T. Hubner and Ronald D. Wolfe for Respondent.

KNIGHT, J.—Toba Leah Foreman, surviving sister and sole heir at law of Harry Cohen, deceased, appeals from an order entered September 12, 1941, approving an assignment by her to the respondent, J. L. Gwirtz, of 30 per cent of her interest in the estate of her deceased brother; also from that portion of the decree of final distribution entered February 13, 1943, confirming such approval and distributing to respondent the share of the estate called for by the assignment.

The two appeals are presented in one record, from which the following facts appear: The decedent, Harry Cohen, a resident of San Francisco for many years, died intestate in that city in January, 1938, leaving an estate consisting of cash on deposit in local banks amounting to approximately $47,448. He was a native of Russia, unmarried, and at the time of his death it was not known whether he was survived by any collateral heirs. On February 15, 1938, letters of administration were issued to the public administrator, and on July 26, 1940, he filed his final account and a petition for final distribution of the estate "to the persons who by law are entitled thereto." At the time of Cohen's death a friend of his, named Weinstein, informed the undertaker that a week or two before Cohen died he had stated that he had a sister, named Toba Leah Foreman, living in Philadelphia. This was noted by the undertaker in his records, and on the day following the funeral Weinstein imparted this same information to the public administrator. Soon thereafter several genealogists and so-called "heir-hunter" agencies began searching for the decedent's sister and any other heirs who might be entitled to share in the estate. The respondent Gwirtz is a genealogist, and conducted such an agency in Philadelphia. (He is not a member of the legal profession.) Eventually he located the decedent's sister in New York, and on May 9, 1940, as the result of negotiations carried on over a number of days between the parties and those acting for them, appellant executed the following assignment:

"Estate of Harry Cohen deceased.

"FOR AND IN CONSIDERATION OF ONE DOLLAR, receipt

whereof is hereby acknowledged,—and in further consideration of J. L. GWIRTZ having revealed to me the fact that there is a fund of money, or other assets, which may be due me from the above estate, as well as in further consideration of his time, effort and expense in investigation and procuring proof of relationship, I, the undersigned, hereby agree to and by these presents do transfer, set over and assign unto the said J. L. GWIRTZ, his executors, administrators and assigns, all my right, title and interest in and to THIRTY (30%) PERCENT of said fund of money or other assets awarded to me,—which shall include the expenses laid out by J. L. GWIRTZ. I shall not be liable to J. L. GWIRTZ for expenses laid out by him in case there is no recovery. All of the above shall be binding upon my executors, administrators, heirs and assigns.

"WITNESSETH my hand and seal this 9 day of May 1940."

The execution of the assignment by appellant was witnessed by her two adult sons and acknowledged by her before a notary public in Kings County, New York; and attached thereto was the certificate of the Clerk of the Supreme Court of Kings County certifying to the qualifications of the notary. On September 5, 1940, in order to comply with the requirements of sections 530 and 530.1 of the Probate Code, Gwirtz filed the assignment in San Francisco with the clerk of the court in which the probate proceedings were pending, together with a petition for the approval thereof; and on October 29, 1940, appellant filed an answer to the petition, opposing the granting thereof. The grounds of opposition were: that the assignment was illegal and void because the assignee was not licensed or bonded as required by the law of California; that by reason of old age, enfeebled physical and mental condition, inability to read or write and want of independent advice, appellant was "unable mentally to grasp the purport of a contract" and did "not recall entering into any business deal or executing any contract or assignment" with Gwirtz; also that she was not given a copy of the assignment.

The hearing of the issues raised by the petition and the answer extended over a period of many days, and on September 10, 1941, at the close of the evidence, appellant, by leave of court, filed an amendment to her grounds of opposition wherein she denied ever having made, executed, delivered, or acknowledged the written assignment. Thereafter and on Sep-

tember 12, 1941, the court made and filed its findings of fact and conclusions of law wherein it found adversely to appellant on all of the foregoing issues. Also, in the exercise of the duty imposed and powers conferred by sections 530 and 530.1 to inquire into and determine the validity of such instruments and the reasonableness of the compensation provided for therein, the court further found from the evidence introduced by the parties on those issues, that the assignment was in regular form required by the provisions of section 530 of the Probate Code; that it had been duly filed with the clerk of the court in accordance with the provisions of the section and was then on file with the papers and proceedings in the case, and "that the compensation of 30% stipulated in said contract is a reasonable and valid compensation for the services rendered by J. L. Gwirtz"; and its conclusions of law were "that said assignment has been executed as required by law, is regular in form, and is valid and reasonable as to amount and should be approved in whole." Thereafter many months were consumed in taking depositions to prove heirship, and on February 13, 1943, the court rendered its decree of final distribution, wherein it again found that "the said assignment was executed in the manner and form required by law, and that the same is in all respects fair, just and reasonable," and accordingly distributed 30 per cent of the residue of the estate to the said J. L. Gwirtz and the remaining 70 per cent to appellant.

There is no merit in any of the several points urged in support of the appeals. The major portion of the opening brief is devoted to an attack upon the soundness of the court's findings of fact and conclusions of law, the chief complaint made being that since no obligation was imposed on respondent to pay appellant's attorney's fee and costs out of his share in the event she was successful in establishing her right of inheritance, the assignment to him of 30 per cent as compensation for his services was unreasonable; and appellant argues that upon that ground the probate court should have declared the assignment to be void.

It will be noted, however, from an examination of the provisions of sections 530 and 530.1, that the question of the reasonableness of the compensation provided for in an instrument of this kind is one of pure fact to be determined by the court having jurisdiction of the probate proceeding; and in the present case the evidence introduced by respondent on that

issue is ample to sustain the court's finding thereon. The most that can be said for the evidence submitted and relied on by appellant is that it merely raised a conflict.

■ There is also abundant evidence supporting the findings and conclusions that the assignment was executed in the manner and form required by law and that the same is fair, just and valid. In this connection the record shows, among other things, that the negotiations leading up to the execution of the assignment were carried on for a considerable time and in behalf of appellant were conducted by her two adult sons and a lawyer selected by them; and at no time has it been claimed, nor is there any evidence tending to show, that any fraud was practiced by respondent or those acting for him in obtaining the assignment.

■ Sections 530 and 530.1 were added to the Probate Code as new sections in 1939, and in 1941 they were repealed and the substance thereof embodied in the enactment of section 1020.1 of said code. As enacted in 1939, sections 530 and 530.1 were evidently patterned after similar laws then existing in the State of New York; that being so, appellant contends that the decisions of that state are here controlling in the determination of the validity of the assignment in the present case. In this respect it appears that the statute of each state embodies the declaration that nothing contained therein shall be deemed to authorize the practice of law by an attorney in fact or other person acting under an instrument mentioned in the statute who is not a member of the bar of that state; and appellant claims that the New York courts have held that if an attorney in fact acting under such an instrument agrees or undertakes to hire a lawyer for the other party to handle or carry on the litigation referred to in the instrument the attorney in fact is practicing law without a license in violation of the statute, and the instrument is void. Even assuming that the cases cited by appellant do so hold, there is nothing whatever contained in the instrument in question here which could be construed as authorizing or permitting respondent to select an attorney for appellant; and the evidence definitely shows that prior to and at the time of the execution of the assignment he not only informed those acting for appellant that he could not select a lawyer for her, but that he expressly refused so to do; furthermore the record shows that throughout the probate proceedings appellant

was represented in and out of this state by attorneys of her own selection.

Appellant also contends that the instrument in question is not enforceable in California for the reason that it was executed in New York and that therefore respondent should have complied with the procedural requirements of the New York statute by filing the instrument for approval in a surrogate's court in the State of New York, which he did not do. The negative answer to this contention is found in the statutes of both states, for it is therein expressly declared that the assignment or other instrument mentioned therein must be filed for approval in the court issuing the letters testamentary or of administration. In the present case the courts of New York were without jurisdiction to entertain any proceeding connected with the decedent's estate; nor were any proceedings whatever instituted therein. As hereinabove set forth, the decedent for many years prior to and at the time of his death was a resident of San Francisco; his entire estate consisted of money in San Francisco banks, and letters of administration were issued in that city.

The final point made in the opening brief is that the probate court abused its discretion in denying appellant's motion for a new trial. It was based upon the ground of newly discovered evidence relating to the issue of whether appellant acknowledged the execution of the assignment before the notary as recited in his certificate. It appears from the record, however, that the evidence relied upon as newly discovered was available to and could have been produced by appellant at the trial on that issue. For that reason the probate court was justified in denying the motion.

Subsequent to the filing of the opening brief by the member of the local bar who had conducted all of the probate proceedings in behalf of appellant, he retired from the case, and at the time the appeal came on for oral argument appellant's counsel from Philadelphia appeared for her and was granted permission to argue the appeal in her behalf. At the commencement of his argument he stated in substance that he did not rely on any of the points made in the opening brief —that in fact he had not read it—and he asked for and was granted permission to raise and argue a new ground of objection to the validity of the assignment, to wit, that the transactions had between appellant and respondent resulting

in the execution of the assignment were of a champertous nature and that upon that ground alone this court should hold the assignment to be void; and at the conclusion of counsel's argument he was granted time to file a closing brief in support of his oral argument.

None of the points urged by counsel in his oral argument or in his brief furnish ground for reversal, for the reason that California is one of the many states that has never adopted the common law doctrines of champerty and maintenance. As pointed out in California Jurisprudence (vol. 4, p. 1120) those doctrines have their origin in statutes enacted in England in early times, but which afterwards became nearly obsolete because under enlightened and impartial administration of justice in later times the evils those doctrines were designed to prevent had ceased. While, therefore, such doctrines were peculiar to early English society, they were inapplicable to American society, and were not recognized unless by statute enacted; and there is no statute upon the subject in California. In so declaring the article in California Jurisprudence goes on to state (p. 1120): ". . . there is no doubt that the legislature of 1850, when it adopted the statutes which were deemed necessary to organize the legal system of the state, by omitting to enact any such statute, acted in the spirit of the decisions which held such laws inapplicable to this country, and with the direct purpose that there should be no law relating to the subject. In the absence of such a statute, the offense of maintenance is unknown to the laws of California. Similarly, the doctrine of champerty and the principles based thereon have no application under the system of jurisprudence prevailing in California."

Moreover, by the enactment of Probate Code sections 530, 530.1 and 1020.1 the Legislature has expressly authorized and empowered probate courts to approve and enforce assignments of the type here under consideration, provided, of course, they are not found to be tainted with fraud or with elements which would render any contract void as being repugnant to good morals and against public policy; and in the present case the probate court has in effect made negative findings as to the existence of any of the elements, which findings are fully supported by the evidence.

All of the cases cited by appellant from other jurisdictions arose in states adhering to the common law doctrines of champerty and maintenance, and therefore are inapplicable to

the jurisprudence of this state. Among those cited are two from the Orphans' Court in Pennsylvania. (*McIlwaine's Estate*, 27 Penn. Dist. and County Reports, 619; and *Estate of Elizabeth A. Green*, Orphans' Court of Philadelphia County, No. 2672 of 1938, unreported.) The former involved an assignment to the respondent Gwirtz, the form of which was substantially the same as the one under consideration here, and it was there held to be void. But that case cannot be taken as controlling here, because aside from the fact that Pennsylvania is one of the states adhering to the common law doctrines of champerty and maintenance, it appears that attached to the assignment was an irrevocable power of attorney, the presence of which, even under the provisions of our section 530, would render the instrument void. Furthermore, in that case the court found as a fact that the conduct of the claimant in obtaining the assignment was tainted with fraud and deceit, while here no fraud or deceit was alleged or found. In the second case, *Estate of Green, supra,* the basis of the decision was that the transaction was champertous, and therefore under the common law doctrine prevailing in that state was void.

Relying on certain dictum embodied in the opinion rendered in *Hare* v. *McGue*, 178 Cal. 740 [174 P. 663, L.R.A. 1918F 1099], appellant argues that since part of the consideration for the assignment herein was respondent's services in procuring proof of the relationship; and the assignment to him of thirty per cent of appellant's interest in the estate was in effect made contingent upon establishing her right of inheritance, the assignment was void as being against good morals and public policy. The decision in that case was rendered, however, in 1918, which was many years prior to the enactment of sections 530 and 530.1 of the Probate Code, whereby the Legislature of this state recognized the validity of so-called "heir-hunter" contracts of the type here involved. Even assuming, therefore, that the dictum of the Hare case stated a sound principle of law, it became obsolete, insofar as it concerned the type of contract under consideration here, upon the adoption by the Legislature in 1939 of Probate Code sections 530 and 530.1.

The remaining points urged by appellant's present counsel against the validity of the instrument are either merely incidental to his main contention that the transaction was champertous, or they are substantially the same points as

those urged in the opening brief, which have already been discussed and determined.

■ Respondent contends that he is entitled not only to an affirmance, but also to an order allowing him interest at the legal rate on his distributive share of the estate from the time of the rendition of the decree of final distribution up to the termination of these appeals. The contention is not sustainable. Respondent concedes that since the appeals were not taken by the public administrator he cannot be held liable for the payment of interest at the legal rate, but respondent asks that the public administrator be directed to pay the same out of any part of appellant's distributive share of the estate now remaining in his hands. There is no law authorizing the making of such an order. ■ And besides, the decree of final distribution directed that appellant's distributive share be paid to her attorney in fact; there was no appeal taken from that portion of the decree, and it will be presumed that the public administrator forthwith complied therewith.

The order and that portion of the decree from which the appeals were taken are affirmed.

Peters, P. J., and Dooling, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 21, 1944.