WOOD, P. J.
 

 This is an appeal by certain defendants (referred to herein as defendants) in two proceedings to condemn real property for highway purposes. The proceedings were consolidated for trial, and the jury found that the value of defendants’ property which was taken was $424,062, the amount of severance damages to the remaining property was $229,500, and the amount of special benefits to the remaining property was $248,500. Judgment was entered awarding $424,062 (the value of the property taken) to defendants.
 

 The notice of appeal states that defendants appeal from the judgment “insofar as said judgment and the decision of the court upon which it is based deny recovery to—defendants of the amount of $229,500 found by the jury to be the amount of severance damage to their remaining property. ...”
 

 Section 1248 of the Code of Civil Procedure provides, in part: “The court, jury, or referee [in a condemnation proceeding] . . . must ascertain and assess: 1. The value of the property sought to be condemned . . .; 2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff; 3. Separately, how much the portion not sought to be condemned . . . will be benefited, if at all, by the construction of the improvement
 
 *18
 
 proposed by the plaintiffs; and if the benefit shall be equal to the damages assessed under subdivision 2, the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value. ...”
 

 As above stated, the jury found that the value of the property taken was $424,062, the severance damages were $229,500, and the special benefits were $248,500. The benefits, as found by the jury, were in excess of the severance damages, as found by the jury, and therefore the judgment was for the value of the property only.
 

 Appellants own a parcel of real property, consisting of approximately 993 acres, in the Santa Monica Mountains. The property extends generally from Mulholland Drive, on the north, to Casiano Drive (near Sunset Boulevard), on the south, and it is intersected by Sepulveda Boulevard. The property is in the City of Los Angeles, is unimproved, and is zoned for single-family residential use. In 1953 the state acquired a portion of the property for the construction of the San Diego Freeway. In 1959 the design of the proposed freeway was changed, and the state commenced this action to acquire from defendants additional property (approximately 53 acres), to acquire slope easements (to approximately 17 acres), and to acquire temporary easements for construction purposes (to approximately 12 acres). Portions of the property sought were for freeway purposes, and other portions sought were for the relocation of Mulholland Drive and of other streets necessitated by construction of the freeway.
 

 Mr. Williams and Mr. Metcalfe, called as valuation witnesses by defendants, each testified, on cross-examination, to the effect that in his opinion there would be no compensable special benefits to the remaining property by reason of the construction of the proposed improvement.
 

 Mr. Sparks, a valuation witness called by plaintiff, testified that, in his opinion, there would be special benefits in the amount of $497,386, and he apportioned that amount as follows: $119,172 to Parcel 1A; $36,192 to Parcel 5B; $233,072 to the northeasterly “section” of the property; and $108,950 to the “lower east section.”
 

 Mr. Evans, a valuation expert called by plaintiff, testified that, in his opinion, there would be special benefits in the
 
 *19
 
 amount of $241,000, and he apportioned that amount as follows : $57,200 to Parcel 1A; $14,350 to Parcel 5B; $150,000 to the southeasterly 598% acres; and the balance ($19,450) to Parcels 1C and 3B.
 

 Defendants moved to strike the opinions of Mr. Sparks and Mr. Evans as to the total amount of special benefits, and they also moved to strike the opinions of Mr. Sparks as to the amount of special benefits to each parcel and section.
 

 The motions to strike the opinions of Mr. Sparks with reference to the amount of special benefits to Parcels 1A and 5B were made on the ground that, in determining the amount of special benefits to those parcels, he relied “almost entirely” upon a reasonable probability of a change of zoning of the parcels. The motions to strike the opinions of Mr. Sparks with reference to the amount of special benefits to the northeasterly section and the lower east section were made on the ground that, in determining the amount of special benefits to those sections, he relied in a substantial part upon benefits to be derived from construction of improvements on property other than parts of the property being taken. The motion to strike the opinion of Mr. Sparks as to the total amount of special benefits was based on “all the other grounds . . . cited with respect to various parts of Mr. Sparks’ opinion of special benefits, plus the additional ground that Mr. Sparks considered . . . the owner to have ... [a] legal right to connect [with the highway] at any point of his own choosing.”
 

 The motion to strike the opinion of Mr. Evans, as to the total amount of special benefits, was based on the ground that he had based his opinion in substantial part “upon construction [of improvements] off the property being taken in this proceeding. ’ ’
 

 The motions to strike were denied.
 

 Appellant contends that the court erred in denying the motions to strike referred to above. They argue that the court, by denying the motions, erroneously permitted the jury, in determining the amount of special benefits, to consider (1) the reasonable probability of a change of zoning of the remaining property, (2) increased access to the remaining property based upon the premise that an owner of land abutting a public road has a right of access at any and all points of his own choosing in the boundary between his property and the road, and (3) increased access to the remaining property resulting from con
 
 *20
 
 struction of the improvement on land other than land taken in the proceedings.
 

 As above indicated, the motions to strike testimony with respect to benefits based upon a reasonable probability of rezoning were directed only to the opinions of Mr. Sparks with respect to benefits to Parcels 1A and 5B, and the motions were made on the ground that Mr. Sparks relied “almost entirely” upon a reasonable probability of rezoning those parcels.
 

 In
 
 People
 
 v.
 
 Dunn,
 
 46 Cal.2d 639, 642 [297 P.2d 964], it was said: “As to Parcel 1 it is contended that, in fixing the amount of severance damages, it was error to admit evidence of the probability of a change of zoning of the remainder of the block from which Parcel 1 was taken. Where the land is not presently available for a particular use by reason of a zoning ordinance or other restriction imposed by law, but the evidence tends to show a ‘reasonable probability’ of a change in the near future, the effect of such probability upon the minds of purchasers generally may be taken into consideration in fixing present market value. [Citation.] Here the People’s experts testified that they had made investigations and that as a result they were of the opinion that a change of zoning was reasonably or highly probable. There was no error in the admission of such testimony.”
 

 In the present proceeding, Parcel 1A consists of approximately 10 acres and, after completion of the proposed improvement, it will be approximately 200 to 400 feet wide and will extend approximately 2,100 feet along the east side of Sepulveda, and will extend approximately 2,100 feet along the west side of Mulholland, as relocated. Parcel 5B consists of approximately 2 acres and will be triangular in shape, and will extend approximately 800 feet along the west side of the freeway, extend approximately 800 feet along the east side of Sepulveda, as relocated, and extend approximately 400 feet along the south side of an off-ramp from the freeway to Sepulveda, as relocated.
 

 Mr. Sparks' testimony on direct examination with respect to special benefits to Parcels 1A and 5B was as follows: Parcel 1A is in a section that has been leveled and has been given 2,100 feet of frontage on a new street. He “felt” that there was a reasonable probability of rezoning the parcel “to at least a multiple zone” for apartment houses or flat units. There is water service available, but there are no sewers. He
 
 *21
 
 felt that the property “would bring” $18,000 an acre on the open market at. the date of valuation, and that it is reasonable to assume that, after the utilities are in and the property is rezoned, it would be worth at least twice the amount it would bring on the date of valuation. Parcel 5B will be leveled, filled and compacted, and will be a “buffer strip.” There will be access from it to the freeway and there will be frontage on the “new” Sepulveda. He felt that there was a reasonable probability that the parcel would be rezoned and, in his opinion, a prospective purchaser would feel that there was a reasonable probability that the parcel would be rezoned. He felt that if the parcel were now rezoned and “had utilities” it would be worth at least twice the value of $25,000 an acre that he “put on it,” but the buyer would have to wait until the utilities were available and would have the responsibility of rezoning. It was for this reason that he placed a special benefit of $36,192 “on it” (approximately $18,000 an acre).
 

 On cross-examination, Mr. Sparks testified, with respect to special benefits to Parcels 1A and 5B, as follows: The “premise” that there is a reasonable probability that Parcel 1A would be rezoned after the construction of the proposed improvement was one of the factors which he considered in forming his opinion as to the amount of special benefit to the parcel. His opinion that there was a reasonable probability that Parcel 5B would be rezoned was one of the factors which he considered in forming his opinion as to the amount of special benefit to that parcel. He had talked on two different occasions “to the men ’' in the zoning department of the city, and from the conversation he had with them he formed the opinion that it was reasonable to assume that there would “be rezoning.”
 

 It thus appears that there was evidence that Mr. Sparks had made an investigation of the probability of rezoning and that as a result thereof he was of the opinion that a change of zoning was reasonably probable. It also appears that his opinions as to the amount of special benefits to Parcels 1A and 5B were not based solely upon a reasonable probability that those parcels would be rezoned, but that such probability was one of several factors on which he based his opinions. Other factors, with respect to Parcel 1A, were: it would be a level area and would have a frontage of 2,100 feet on a new street (Mulholland). Other factors, with respect to Parcel 5B, were: it would be compact and level, would be a buffer street (between Sepulveda and Mulholland), it would have a front
 
 *22
 
 age on Sepulveda, and there would be access from the parcel to the freeway. Since a reasonable probability of rezoning may be taken into consideration in fixing present market value of property taken
 
 (People
 
 v.
 
 Dunn, supra,
 
 46 Cal.2d 639, 642 [297 P.2d 964]), it would seem that such probability of rezoning might also be taken into consideration in determining the matter of special benefits. As above stated, Mr. Sparks testified that he had made an investigation of the probability of rezoning and that as a result of such investigation he was of the opinion that a change of zoning was reasonably probable. Such reasonable probability of rezoning the remaining property of defendants as a result of the construction of the improvement was a proper factor to be considered by Mr. Sparks in forming his opinion as to the amount of special benefits to Parcels 1A and 5B. The trial court did not err in denying defendants’ motions to strike the opinions of Mr. Sparks with respect to the amount of special benefits which opinions were based in part on rezoning. As above indicated, defendants did not move to strike the opinion of Mr. Evans, as to the amount of special benefits, on the ground that he had based his opinion on the probability of a change of zoning.
 

 Appellants refer to certain testimony of Mr. Sparks in support of their contention that the trial court, by denying their motion to strike, erroneously permitted the jury, in determining the amount of special benefits, to consider increased access to the remaining property based upon the premise that an owner of land abutting a public road has a right of access at any and all points of his own choosing in the boundary between his property and the road. The testimony to which appellants refer was given on cross-examination. The following questions and answers appear in the redirect examination of Mr. Sparks: “Q. ... You were asked [on cross-examination] whether if your special benefits were, shall we say, predicated upon access at all points upon these new frontage roads and new streets there being created, that is, from the remaining property and to the remaining property. Is that the basis of your special benefits? A. That is one of the factors, yes, the ability to get on and off and to have access. Q. And in your consideration of benefits by reason of that, Mr. Sparks, did you assume at all points? A. No. Do you mean no curbs, that they could walk ... I don’t know as I understand. I assume that whatever use the. property would be put to,
 
 *23
 
 whether it be one owner or many owners, that there would be adequate access, curb cuts, adequate access to houses or buildings or roads, whatever would be necessary. Q. Is it your understanding, or is your understanding otherwise, Mr. Sparks, that access to City street or County road or highways implies unlimited access or access subject to control? A. Subject to what? Q. Subject to control. A. Well, we live in a controlled world. No, if you even want a curb cut in a city street where it is all developed, you have to get a permit. It is subject to control by the Board of Public Works, State Highway Department, or by the City or County. Q. In your consideration of special benefits, were you or were you not mindful of this, sir? A. Oh, yes. I think I testified on cross-examination, yes, surely.” It therefore appears that Mr. Sparks' opinion as to special benefits by reason of increased access was not based upon the premise that an owner has an unlimited right of access, but that it was based upon the premise that such right was subject to control by proper authorities. The trial court did not err in denying defendants’ motion to strike the opinion of Mr. Sparks which was based upon right of access from abutting property. Furthermore, at the request of defendants, the following instruction was given: “An owner of land abutting on a public road has a right to reasonable access to and from the road. In determining what is reasonable access consideration should be given to the nature and features of the abutting property and to the purposes for which the property is adapted. Such an abutting owner does not, however, have the right to access at all points on the boundary line between his property and the public road. The public may regulate and control the design of, and location of, the size of and the number of entries to the road from the abutting land in the interest of public safety. ’ ’
 

 With respect to appellants’ contention that the trial court erred in denying their motion to strike the opinions of Mr. Sparks and Mr. Evans for the reasons that those opinions were based upon increased access resulting from construction of the improvement on land other than land taken in the proceedings, appellants argue that special benefits are the opposite of severance damages and that such benefits are to be ascertained by the same principles as severance damages. They quote from Nichols on Eminent Domain, and from
 
 People
 
 v.
 
 Symons,
 
 54 Cal.2d 855 [9 Cal.Rptr. 363, 357 P.2d 451], The quotation from Nichols is: “Benefits to remaining land must
 
 *24
 
 arise from the creation of the improvement, and are ascertained according to the same principles as damages.” (3 Nichols on Eminent Domain (3d ed.), § 8.6201, pp. 40-41.) The quotation from
 
 People
 
 v.
 
 Symons, supra,
 
 is: “ ‘An owner, whose land is being condemned in part, may not recover damages in the condemnation action to the remainder of his land caused by the manner in which the works are to be constructed or operated on the lands of others. The detriment for which he may recover compensation is that which will result from the operation of the works upon his land alone.’ ”
 
 (People
 
 v.
 
 Symons, supra,
 
 54 Cal.2d 855, 861 [9 Cal.Rptr. 363, 357 P.2d 451].) Appellants argue further that, if “special benefits and severance damages are opposite and must be ascertained by the same rules and if there can be no recovery for severance damages arising from construction off the property taken, then it would seem to be both logical and fair that there can be no assessment of special benefits arising from construction off the property taken.” It was said further in Nichols on Eminent Domain: “It [the benefit] must result from the particular improvement for which the land was taken. When, however, several elements are part of one general scheme of public improvement, the benefit from the whole may be considered, although the taking was for only one element.” (3 Nichols on Eminent Domain (3d ed.) § 8.6201, pp. 42-43.) In the present case, the portions of the property taken were for one general scheme of improvement, i.e., the construction of the freeway, and the relocation of Mulholland Drive, Sepulveda Boulevard, and other streets for a more complete utilization of the freeway.
 

 The trial court did not err in denying the motion to strike the opinions of Mr. Sparks, or the motion to strike the opinion of Mr. Evans, which opinions were based upon the increased access resulting from construction of the improvement on land other than land taken in the proceedings.
 

 Appellants contend that the court erred in refusing to give two instructions, with respect to special benefits, which were requested by them.
 

 The first of those instructions was: “Prospective enhancement in value of the remaining property or any part thereof, if any there be, which can occur, if at all, only after a change of zone or a zone variance is not a proper basis for a finding of special benefits and should therefore be entirely disregarded by you.”
 

 
 *25
 
 As above indicated, evidence of reasonable probability of a change of zoning after construction of the improvement may be considered in determining the amount of special benefits. Furthermore, at the request of defendants, the trial court gave the following instructions:
 

 “No change of zone or zone variance will result only from the mere construction of the improvement herein.”
 

 “The property involved herein is zoned El pursuant to the zoning ordinances of the City of Los Angeles. No part of the remaining property can be legally used for multiple residential or commercial purposes except after a zone change or a zone variance.”
 

 The trial court did not err in refusing to give the first instruction above stated.
 

 The other instruction which the trial court refused to give was to the effect that there can be no special benefits to the remaining land caused by the construction and operation of the improvement on the land of others. As above stated, evidence of benefits resulting from the entire scheme 'of improvement may be considered. The trial court did not err in refusing to give the instruction last above stated.
 

 Appellants contend that the trial court erred in permitting cross-examination of Mr. Williams and Mr. Metcalfe (valuation witnesses called by appellants) with respect to special benefits based upon a reasonable probability of a change of zoning. As above indicated, evidence of a reasonable probability of a change of zoning after construction of the improvement is admissible on the issue of special benefits. The trial court did not err in permitting cross-examination of Mr. Williams and Mr. Metcalfe with respect to such reasonable probability.
 

 In view of the above conclusions, it is not necessary to discuss other contentions on appeal.
 

 The portion of the judgment appealed from is affirmed.
 

 Fourt, J., and Lillie, J., concurred.
 

 A petition for a rehearing was denied July 24, 1962, and appellants’ petition for a hearing by the Supreme Court was denied August 22, 1962. Schauer, J., McComb, J., and Peters, J., were of the opinion that the petition should be granted.