[Civ. No. 6688.   Fourth Dist.   July 31, 1962.]

THE PEOPLE ex rel. THE DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. VALLEY DRIVE-IN THEATER CORPORATION, Defendant and Appellant.

310

Cooper & Nelsen, Gerald R. Knudson, Francis A. O'Neill, Richard L. Huxtable and Leslie R. Tarr for Defendants and Appellants.

George C. Hadley, William H. Peterson, Charles E. Spencer, Jr., and Robert E. Reed for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant and appellant Valley Drive-In Theater Corporation (hereinafter referred to as defendant corporation) appeals from a judgment in condemnation based upon a jury verdict in an action filed on August 22, 1958, by plaintiff and respondent Division of Highways, State of California (hereinafter referred to as plaintiff) for the acquisition of four parcels of real property described in the complaint and therein designated parcel 1-A, for freeway purposes, parcel 1-B, for county road purposes, parcel 1-C, for county road purposes,. and parcel 1-D for state highway and flood control drainage purposes. On August 28, 1958, defendants owned approximately 38½ acres of land in the block bounded by Mission Boulevard, Opal Street, Canal Street and Pacific Avenue, in an unincorporated suburb of the City of Riverside known as "Rubidoux." This land had been acquired in four parcels by defendant corporation over a period of years from 1953 through 1957. At the commencement of the action, all four parcels were held in the same title, Valley Drive-In Theater Corporation, a corporation. The most southerly 16.30 acres were acquired on June 30, 1953, from one Hunt. At the time of acquisition, it was improved with a drive-in theater accommodating approximately 730 automobiles. The screen of the drive-in theater was situated in the southwesterly portion of the property, approximately

225 feet easterly of Opal Street, which bounded the drive-in theater on the west, and approximately 300 feet northerly of Mission Boulevard, which bounded the drive-in theater on the south. The screen faced in a northerly direction and the paved and fenced area, erected for the accommodation of automobiles, fanned out in concentric arcs from the screen. The paved and fenced area extended only as far as the concentric arcs would permit inclusion within the boundaries of the 16.30 acres, leaving small, irregular portions outside the fence. The purpose of the fence, as claimed by defendant, was not to delineate the boundaries of ownership, but to enclose the paved area of the drive-in theater itself, to confine action of winds on paper and other debris thrown on the ground when the drive-in theater was in use, and it also simplified the task of policing the theater during use.

Shortly after the advent of Cinemascope projection, early in 1954, an employee of defendant corporation approached one Gobruegge seeking to purchase the most southerly 150 feet of his property, but Gobruegge did not desire to sell at that time. Negotiations continued until the summer of 1954, when defendant corporation enlarged the screen of the drive-in theater to accommodate Cinemascope projection. Defendant corporation was also unable to purchase the southerly portions of the other properties for this expansion purpose. Defendant corporation was required to purchase the entire property for the use of the southerly sections thereof.

On September 12, 1955, by deed recorded November 4, 1955, defendant corporation purchased from Gobruegge, 8.94 acres of land containing citrus trees located in the northeast portion of the entire acreage. On April 18, 1956, by deed recorded July 11, 1956, one Rulofson sold defendant corporation 12.78 acres of land located in the northwest corner of said entire acreage containing citrus trees. It is the claim of defendant corporation that about February 11, 1957, plans were completed by it for the expansion of the theater, because of the advent of Cinemascope projection, to include portions of the property purchased from Gobruegge and Rulofson as well as a portion of property east of the theater which defendant corporation was then seeking to acquire from a Mrs. Fugere. The court refused to admit these plans in evidence. On August 13, 1957, the small parcel purchased from Mrs. Fugere had a reservoir upon it. On December 16, 1957, a building permit was obtained from the County of Riverside

under which a retaining wall was to be built along the easterly boundary of the original property, extending through the property purchased from Mrs. Fugere into the property bought from Gobruegge. However, no application for a zone change was made. Late in December 1957, work began on the property acquired from Mrs. Fugere by defendants. Holes were drilled in the reservoir in order that it could be filled with dirt, without continuing to retain water; grading operations were commenced; trenches were dug for footings for the retaining wall; and portions of the retaining wall had been constructed. These operations were stopped approximately December 31, 1957, when defendant corporation first learned that the Orange County Flood Control District intended to construct a flood-control channel down the easterly line of the former Fugere property.

On March 5, 1958, a conference was had between an employee of plaintiff and the vice president of defendant corporation. It was during this conference that defendant corporation was first directly advised by plaintiff as to the exact location of the proposed freeway right-of-way, although defendant corporation did know in 1954 that a freeway was going through some portion of the land in that area, but it was not definite. On July 23, 1958, the highway commission passed its resolution under which the present condemnation action was initiated. The route of the freeway as it crosses defendant corporation's land, as later contemplated, crossed from east to west through the property purchased from Gobruegge and Rulofson just immediately north of the 16.30-acre tract on which the theater was located and occupied an overlapping strip over the claimed area of expansion of about 216 to 278 feet in width, denominated parcel 1-A-1, containing about 6.17 acres, parcel 1-A-2, containing about .03 acre, which was a small part of the original theater property, parcel 1-B, containing .044 acre, parcel 1-C, containing .17 acre, and parcel 1-D, containing .79 acre.

### Separate Parcels

One of the principal contentions of defendant corporation is that the trial court erred in ruling, during trial, that the Gobruegge, Rulofson and Fugere parcels purchased by defendant corporation were separate parcels from the original Rubidoux Drive-In Theater parcel and accordingly there could be no severance damage by reason of the taking of the

other three parcels excepting the small parcel denominated 1-A-2 which, incidentally, is also occupied by citrus trees.

Plaintiff's complaint seeks a right-of-way for public use over certain described property, specifically describing all of the parcels mentioned, and states: "Each of said parcels includes only a part of an entire parcel of property" according to maps referred to therein and attached to the complaint. Thereon, plaintiff definitely shows the entire parcel to be all the parcels owned·by defendant corporation.

The claim of defendant corporation is that its answer also alleges that all the property involved and owned by it was in fact one parcel. It specifically describes the theater property as being a part of that parcel, and there was attached to the answer a map specifically designating these parcels surrounded by a red line indicating that the theater property was a part of that parcel. It makes no mention of two separate parcels. Defendant corporation claims that the pretrial statement and order in reference to the issues clearly indicate that there is only one parcel involved and accordingly the court was not authorized to find that there were two separate parcels involved. After individually describing the parcels it owned, it states that the taking involves "only a part of a larger parcel," which included the theater property. Severance damages were sought involving the whole as well as the value of the property sought to be taken and for certain special and general damages.

The pretrial statement, signed by both counsel, recites that the action involves the taking by plaintiff of several named parcels and states that each parcel is but a part of "*a* larger parcel of real property situated in Riverside County." (Italics ours.) It also states that the matters in issue are (1) the fair market value of parcels 1-A, 1-B, 1-C and 1-D; (2) severance damages, if any, to the "larger parcel" from which the above-named parcels "are taken"; (3) special benefits, if any, "to the larger parcel." It also recites that the "pleadings are in order, and no amendments are contemplated."

The pretrial order recites that the facts and issues are set forth in the pretrial statements of counsel and the "issues are joined" and are "as stated in the joint pre-trial statement."

After several days of trial and hearing of the testimony, and after examining maps in evidence showing the parcels to be taken, the trial judge announced his ruling that he believed two separate parcels were involved and found as a

fact, notwithstanding the pleadings and pretrial statement and order, that there were two separate parcels involved and not one parcel as indicated, and directed both counsel to proceed accordingly. A recess was taken for the purpose of drawing new maps in accordance with the ruling.

Defendant corporation now contends that the court was not authorized to make a finding contrary to the pleadings and pretrial order on this issue. A reading of the record clearly indicates that up to this time both parties proceeded to trial upon the theory that but one parcel was involved and that was the entire property held by defendant at the time of the taking. There is merit to this contention.

This court had a question before it in *County of Kings* v. *Scott,* 190 Cal.App.2d 218, 225 [11 Cal.Rptr. 893], wherein it was held that: ". . . the pretrial order supersedes the issues raised by the pleadings and controls the subsequent course of the case [citation] and . . . 'The subsequent course of an action is controlled by agreements made at pre-trial conference so long as they remain unmodified.' "

In that case, no application was made to modify the agreement or pretrial order and this court held that the defendant was bound by the agreed statement of facts contained therein and that nothing contained in such agreed statement of facts can be raised as an issue on appeal.

No application was made in the instant case to modify the agreed statement of facts and issues or pretrial order. Under rule 216, California Rules of Court,* in reference to the effect of a pretrial conference order, it is said that when filed such order becomes a part of the record in the case and where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice. The parties and the court were therefore bound by the agreed statement of facts and issues and were not authorized to make findings contrary thereto without proper modification of the agreement and pretrial order. See also *Baird* v. *Hodson,* 161 Cal.App.2d 687 [327 P.2d 215]; *Dell'Orto* v. *Dell'Orto,* 166 Cal.App.2d 825, 829 [334 P.2d 97]; *Cal-Neva Lodge, Inc.* v. *Marx,* 178 Cal.App.2d 186, 187 [2 Cal.Rptr. 889]; *Fitzsimmons* v. *Jones,* 179 Cal.App.2d 5, 8 [3 Cal.Rptr. 373]. *County of Los Angeles* v. *Beverley,* 126 Cal.App.2d 89, 91 [271 P.2d 965], is directly

*Formerly Rules for the Superior Courts, rule 8.8.

in point as to allegations that the parcel sought to be condemned is ''only a part of a larger contiguous parcel. . . .''

■ The remaining question is whether defendant corporation's right to claim error in this respect was subsequently waived by its attorney's actions and conduct in respect thereto.

At the time, the court announced that all parties should proceed upon this ruling of the court and the theory that there were, in fact, two parcels involved: one, the theater property, and the other, the northerly portion of defendant corporation's property; and that accordingly defendant corporation would not be entitled to recover severance damages for the theater portion, with the exception noted as to parcel 1-A-2. The court then, at the suggestion of counsel for plaintiff, and in view of the court's prior ruling, arbitrarily divided parcel 1-A into parcel 1-A-1 (derived from the northerly parcel) and parcel 1-A-2 (to be taken from the theater property). The court asked counsel for defendant corporation if he had any objection to that being done, i.e., division of parcel 1-A, and counsel replied in the negative. The court so ordered. A new map showing the change was offered in evidence. Counsel for defendant then made some inquiry about it and the court said, ''The pleadings may be deemed so amended accordingly.'' Counsel for defendant was asked if he had any objections and he answered ''No.'' The map was then received in evidence. There was never any amended pleading filed and no change was made in the pretrial statement or order, nor was there ever any application made to change it. The trial proceeded. While defendant's counsel made no specific objections at the time as to the state of the pleadings and nature of the pretrial agreement and order, defendant corporation was foreclosed from proceeding upon the basis that there was but one parcel and he was compelled to abide the ruling of the court. Subsequently, he offered evidence supporting his theory reflected by the pleadings and pretrial order in this respect and objections were sustained to much of that evidence and he was more or less limited to the severance damage for the taking of parcel 1-A-2 in respect to the theater property. Severance damages were allowed for the northerly property. To comply with the court's ruling, considerable evidence was then offered and refused with respect to the consideration of reasonable probability of joinder or assemblance, probability of rezoning (*People* v. *Dunn*, 46

Cal.2d 639 [297 P.2d 964]; *People* ex rel. *Dept. of Public Works* v. *Hurd*, 205 Cal.App.2d 16 [23 Cal.Rptr. 67], and particularly as to the value of parcel 1-A-1 to be taken as being part of the whole, including the theater property. Had the case been tried on the theory shown by the pleadings and pretrial agreement, no doubt a different result would have obtained. Even though it may be considered, for lack of objection, that the pleadings could be deemed amended in some indefinite manner, it does not affirmatively appear that the amendment was so encompassing as to amend the complaint and answer to show that two parcels were involved rather than one. ▪▪▪ Under the authorities cited, even an amendment to the pleading would not prevail over the unamended pretrial order.

Judgment reversed.

Coughlin, J., concurred.