[Civ. No. 27462.   Second Dist., Div. Two.   Aug. 21, 1964.]

GALE H. LANE, as Executrix, etc., et al., Plaintiffs and Appellants, v. MILDRED L. WILKINS et al., Defendants and Appellants.

Robert Wanamaker, in pro. per., for Plaintiffs and Appellants.

Older, Cazier & Hoegh, Older, Hahn, Cazier & Hoegh, Richard B. Hoegh and Robert J. Blaylock for Defendants and Appellants.

FOX, P. J.—Plaintiffs, attorneys at law, brought this action for declaratory relief and for an accounting to determine the extent of their rights to attorneys' fees under a contingent fee agreement entered into between them and the defendants. Defendants, asserting that the fee awarded by the

court is excessive and unauthorized by the agreement, appeal from those portions of the judgment which award plaintiffs $31,514.57 plus interest, and which also declare the percentage rate for computing fees yet to be determined. In general, defendants' contentions relate to the propriety of including certain amounts in the base used to compute the fee, and also to the proper methods of computation under the agreement. These contentions will be considered more particularly following a statement of the somewhat complicated factual background of the case.

The plaintiffs also have appealed from a portion of the judgment which they claim was erroneously computed, and which they seek to have recomputed to increase the amount of their judgment.

The defendants owned an undivided two-thirds interest in approximately 30.82 acres of income property near El Monte known as "Hicks Camp." In February of 1956 defendants, along with the owner of the remaining one-third interest, conveyed this land to one Melvina Brenner for the price of $121,000. Of this purchase price, $20,000 was paid down, $32,500 was represented by a promissory note payable to the sellers and secured a second trust deed, and the balance was represented by the purchaser's assumption of an existing first trust deed. Subsequently, the defendants discovered that certain misrepresentations had been made to them to induce the conveyance, and they consulted with plaintiffs regarding the possible legal remedies available to them.

Plaintiffs agreed to represent the defendants for the purpose of rescinding the conveyance or for the recovery of damages, and such matters as might be incidental thereto, on a contingent fee basis. On December 3, 1956, a seven page "CONTINGENT FEE AGREEMENT," drafted by plaintiffs, was executed by them and the defendants. Under this agreement plaintiffs were to be compensated for their services as follows:

"a. CLIENTS agree to pay to ATTORNEYS one-third of any RECOVERY obtained for CLIENTS by reason of settlement, suit or otherwise;

"b. In the event that ATTORNEYS shall, in this connection, prosecute or defend an appeal from any judgment rendered in a Superior Court, such percentage of any RECOVERY for CLIENTS shall be increased to forty percent of such RECOVERY.

"c. In the event that ATTORNEYS shall petition or resist a petition for hearing or appear before the Supreme Court of the State of California, such percentage of any recovery for

CLIENTS shall be increased to forty-five percent of such RE-COVERY.''

Having set forth the percentages to be applied to any ''RECOVERY'' obtained for defendants, the agreement next proceeds to define ''RECOVERY'' as follows: ''For the purpose of determining the RECOVERY to CLIENTS, if any, that may be made for CLIENTS, the entire property and sale price will be treated as 100%. In computing attorneys fees based upon such RECOVERY, as provided in Paragraph 1 hereof, allowance will be made as required in order to properly reflect CLIENTS undivided two-thirds interest in the property. Since the final outcome of the matter cannot be determined at this time, and since ATTORNEYS fees will be based upon the RECOVERY for CLIENTS and will be paid out of the sale or other disposition of the land, in the event it is recovered, reference is herein made to a BASE PRICE per acre which shall be arrived at by dividing the sum of $121,000.00 by the exact total acreage conveyed to MELVINA BRENNER so as to arrive at the price per acre which for the purposes of this agreement shall be known as the BASE PRICE. In computing the attorneys fees, the BASE PRICE per acre shall be reduced by one-third in order to properly reflect CLIENTS undivided two-thirds interest in the subject land. The RECOVERY to CLIENTS for the purpose of this agreement shall be the difference between such BASE PRICE so reduced and the price for which CLIENTS undivided two-thirds interest in the land may be sold at a bona fide sale or otherwise disposed of or taken under eminent domain proceedings, other than those now pending[,] at any time within a period of five years after the date judgment in the action which it is contemplated will be filed by CLIENTS against MELVINA BRENNER and others becomes final or a settlement of the matter shall have been made, whichever event shall first occur.

''As to the land which may be taken under the eminent domain proceedings now pending against CLIENTS and others, the RECOVERY pro tanto, shall be the difference between the BASE PRICE, reduced as hereinabove provided, and two-thirds of the total amount awarded to the owners of the property in such condemnation action, excepting, however, such amounts as may be awarded to other persons having improvements upon or leasehold interests in the said property.''

The provision relating to the pending eminent domain proceeding refers to an action commenced in 1954 by the El Monte School District to appropriate about 9.4 acres

of Hicks Camp. An award was made in this condemnation action in December of 1956. The total amount of the award was $112,899.90, which was ordered distributed as follows: $1,550 to tenants living at Hicks Camp, $45,000 to the holder of the first trust deed; $30,764.85 to the sellers as holders of the second trust deed; and the balance of $35,585.05 to Melvina Brenner as record owner of the property. The El Monte School District paid the award by depositing the entire amount with the clerk of the Superior Court. The tenants of Hicks Camp appealed from the judgment in this condemnation proceeding.

On December 12, 1956, plaintiffs filed an action on behalf of defendants seeking to rescind the sale to Melvina Brenner. In connection therewith, plaintiffs sought and obtained a preliminary injunction ''restraining all parties from withdrawing any money deposited with the court [by the School District] until final judgment or further order of the court.'' They successfully defended an appeal from the order granting this preliminary injunction. (*Wilkins* v. *Oken,* 157 Cal. App.2d 603 [321 P.2d 876].) Concurrently, plaintiffs asserted defendants' rights in the tenants' appeal from the condemnation award and successfully resisted a petition for a hearing before the Supreme Court. (*El Monte School Dist.* v. *Wilkins,* 177 Cal.App.2d 47, 59 [1 Cal.Rptr. 715].) On July 1, 1959, a judgment was signed rescinding the sale of Hicks Camp to Melvina Brenner upon the condition that the defendants pay into court for her benefit the sum of $10,-082.75. This latter amount represents the defendants' two-thirds share of a net credit found to be owing to Melvina Brenner following an accounting between the parties. The figure is based on a stipulation filed in the rescission action and was arrived at in the following manner: Melvina Brenner was charged with the income from Hicks Camp from January 1, 1956, to December 31, 1958, in the sum of $44,-325.55, and also with a tax reimbursement of $567.59, providing a total charge against her of $44,893.14. Credit to her, as a setoff against this charge, were management expenses for Hicks Camp through 1958 in the sum of $19,664.91, payments on the first trust deed through 1958 in the sum of $17,500, and payments on the second trust deed in the sum of $2,925. The total of these credits is $40,089.91 which, when deducted from the charges against Melvina Brenner, results in a net charge to her of $4,803.23. This charge was then deducted

from the $20,000 down payment she had made, leaving her a net credit in her favor of $15,196.77. An additional net charge to her of $72.64 was made for the period from December 31, 1958 to June 15, 1959. The total net credit was therefore $15,124.13, of which the defendants' two-thirds share was $10,082.75. Upon payment of this amount the conveyance was ordered rescinded, the promissory note secured by the second trust deed was ordered void, and the defendants were ordered entitled to their proportionate share of the condemnation award, subject to the payment of their share of appraisers' fees, certain attorneys' fees in the amount of $535, and other contingent attorneys' fees owed to the lawyers (not the plaintiffs) who represented them through the trial of the condemnation action.

At a meeting on September 15, 1960, plaintiffs and defendants discussed the matter of fees and plaintiffs presented their tentative computation of the amounts they considered owed to them. The defendants disputed certain items included in plaintiffs' computations, and when it became apparent that no agreement could be reached plaintiffs filed the present action for declaratory relief and for an accounting.

At the conclusion of the trial the court determined that the amount owed to plaintiffs under the agreement, exclusive of interest, costs, and advances made by plaintiffs, was $31,-514.57. This figure was arrived at by the following calculations, as explained in the trial judge's memorandum opinion: Beginning with the condemnation award of $112,899.90, the amount awarded to the tenants of Hicks Camp ($1,550) is first deducted, leaving a balance of $111,349.90 as the total award to the landowners. From this amount is subtracted the ''BASE PRICE'' pursuant to the agreement. The base price is $3,926.02 per acre ($121,000 divided by 30.82 acres) hence the total base price to be subtracted from the 9.4 acres of condemned land is $36,904.59. The difference between the amount awarded and the base price is, therefore, $74,445.31 of which defendant's two-thirds share is $49,630.21. The trial court applied the 45 per cent rate to this amount, resulting in a fee of $22,333.59.

In addition to this sum, the trial court determined that there were certain other items of recovery in which plaintiffs were entitled to share. Taking the defendants' share of the original down payment of $20,000 made by Melvina Brenner ($13,333.33) the court subtracted the approximate amount they returned to her pursuant to the judgment of rescission

($10,082.50),[1] and applied the 45 per cent rate to the balance of $3,250.83[2] giving plaintiffs an additional fee of $1,462.87.[3] Next, the trial court took the net profit from Hicks Camp from January 1, 1956 to July 1, 1959 ($25,662.49),[4] multiplied by two-thirds ($17,108.33), and applied a 40 per cent rate to get a fee of $6,843.33. Finally, the court took the payments made on the second trust deed by Melvina Brenner, which totalled $3,280.44, multiplied by two-thirds ($2,186.96) and applied the 40 per cent rate to yield a fee of $874.78. These figures add up to $31,514.57, the total which defendants dispute. Additionally, the court declared that as to the uncondemned portion of Hicks Camp (the remaining 21.42 acres), the correct percentage to be applied when computing attorneys' fees in the future was 45 per cent.

We are of the opinion, after reviewing the record, that the amount determined to be owing to plaintiffs is clearly erroneous in that it included items not properly includable under the agreement between the parties, and also because inapplicable percentage rates were used to compute the fee.

■ Initially, plaintiffs contend that certain provisions in the fee agreement are susceptible of at least two different meanings, and that therefore the trial court's interpretation of the ambiguity is binding on appeal. Whether or not any ambiguity exists at all, however, is a question of law and the trial court's finding on this issue is not binding on appeal. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133 [48 P.2d 13]; *Schmidt* v. *Macco Construction Co.*, 119 Cal.App.2d 717, 730 [260 P.2d 230].) We are of the opinion, for the reasons set forth below, that the portions of this agreement which define the "RECOVERY" are not uncertain or ambiguous.

---

[1]The amount actually returned to Melvina Brenner by the defendants was $10,082.75.

[2]Any fee based on this amount would be duplicative for the following reasons: the credit balance of $10,082.75 owed by defendants to Melvina Brenner reflects a set-off of their portion of the down payment against the charges against her. Thus, when this amount was paid, defendants no longer retained any of the down payment, the court's figure of $3,250.83 notwithstanding. If anything, this amount represents on paper the portion of net profits from Hicks Camp to which defendants were entitled. Since net profits are included by the trial court elsewhere in the recovery, the figure is duplicative.

[3]In the memorandum opinion this item is erroneously computed at 40 per cent (although it purports to be 45 per cent), yielding a fee of $1,300.33. This error is corrected in the final judgment.

[4]This figure includes payments by Melvina Brenner on the first trust deed in the total sum of $20,500.

■ Under the clear terms of the contingent fee agreement plaintiffs' compensation was to be figured by applying the appropriate percentage rate to the ''RECOVERY'' obtained for defendants. The agreement then proceeds to expressly and specifically define what is meant by ''RECOVERY,'' as quoted *supra*. In essence, the ''RECOVERY'' is defined as the difference between the price for which Hicks Camp was sold to Melvina Brenner, reduced to reflect defendants' two-thirds interest, and the price for which their interest in the property is sold or otherwise disposed of within a five-year period. This same formula was repeated in the provision relating to the pending eminent domain action. The definition of what ''RECOVERY'' is to mean, therefore, is explicit. Nowhere in the agreement can any language be found which authorizes any additional items to be included in the ''RECOVERY,'' nor is there any language which supports such an interpretation. We hold, therefore, that the amount of ''RECOVERY'' for defendants in the condemnation proceeding, as determined by the fee agreement, was $49,630.21, this being two-thirds of the difference between the award to the landowners and the ''BASE PRICE'' for the condemned land.

■ The trial court also erred in failing to deduct from this fee base credit for certain items to which plaintiffs conceded defendants were entitled. In their complaint plaintiffs credit defendants with their share (two-thirds) of the attorneys' fees and appraisers' fees incurred in the condemnation action. The amount so credited is $13,123.26. This same amount was included in the joint pretrial statement which sets forth as one of its ''Agreed Facts'' that defendants are entitled to this credit ''to be applied in reduction of the total award to them. . . .'' Plaintiffs' exhibits at the trial indicating their computation of fees also deduct this amount. In short, it is difficult to appreciate the trial court's reasons for failing to deduct this amount. ■ It is well established that the parties and the court are bound by the agreed statement of facts and issues, and that the court is not authorized to make findings contrary thereto without proper modification of the agreement and pretrial order. (*People* ex rel. *Dept. Public Works* v. *Valley Drive-In Theater Corp.,* 206 Cal.App.2d 309, 314 [23 Cal.Rptr. 626], and cases cited therein.) Correction of this error would leave a total fee base or ''RECOVERY'' to defendants of $36,506.95.

■ Having determined the ''RECOVERY,'' the next step is to apply the apppropriate percentage rate to obtain the fees

owed to plaintiffs. We have already set forth the provisions in the fee agreement that control this question. The trial court chose to apply the highest possible rate, 45 per cent. In so doing, it is clear that the court considered that the plaintiffs' services in connection with resisting the petition for hearing in the Supreme Court in the condemnation case entitled them to this percentage. We do not agree. The petition was filed by the tenants of Hicks Camp who were trying to get a larger award in the condemnation action. Virtually all of the work on the appeal to the District Court of Appeal and in resisting the petition for hearing, including the preparation of briefs and the presentation of oral argument, was done not by plaintiffs, but by the attorney who handled the trial of the condemnation proceeding. This attorney was separately compensated for these services. It would therefore be grossly unfair to apply the 45 per cent rate to the "RECOVERY" on the state of the record before us, and unconscionable to apply it, as the trial court did, to the uncondemned portion of Hicks Camp, since the petition in no way involved that land. Moreover, a reading of the fee agreement indicates that the higher rate here used was applicable only if the question of a Supreme Court hearing arose in connection with the rescission suit itself. However, even if we were to assume that an ambiguity exists in this particular, such ambiguity would, of necessity, be construed against plaintiffs. ▪ "The general rule is that in construing contracts between attorneys and clients concerning compensation if there is any ambiguity as to the intent of the parties that construction should be adopted which is most favorable to the client." (*Boardman* v. *Christin,* 65 Cal.App. 413, 418-419 [224 P. 97].) To the same effect, see *Jackson* v. *Campbell,* 215 Cal. 103 [8 P.2d 45]; *Bennett* v. *Potter,* 180 Cal. 736 [183 P. 156]; Civ. Code, § 1654.) There was little, if any, extrinsic evidence adduced at the trial relating to alleged ambiguity in the portions of the agreement that declare the percentage rates to be applied. There is no basis, therefore, for failing to apply the rule of construction quoted above.

▪ The final question to be resolved is whether plaintiffs are entitled to the 40 per cent rate by virtue of their services in defending the appeal from the order granting the preliminary injunction. Plaintiffs sought and obtained this injunction, in connection with the suit for rescission, to prevent the distribution of the condemnation award prior to a determination of its proper recipients. According to the agree-

ment, plaintiffs are entitled to the 40 per cent rate if they defend "an appeal from any judgment rendered in a Superior Court." We are of the opinion that the order granting the injunction is a "judgment" within the meaning of the agreement, and that therefore the 40 per cent rate is applicable to the funds which plaintiffs protected by the injunction proceeding pending the trial of the suit for rescission. (This rate, of course, would not be applied to the uncondemned portion of Hicks Camp.) A contrary decision would result in leaving plaintiffs entirely uncompensated for their services in defending the appeal in a proceeding which was clearly incident to the action for rescission itself.

From the foregoing it follows that the percentage to be applied to the "RECOVERY" of $36,506.95 is 40 per cent, yielding a total fee due to plaintiffs of $14,602.78. It also follows that the 33⅓ per cent rate is to be applied when attorneys' fees are computed for the remaining 21.42 acres of Hicks Camp.

Defendants also challenge the allowance of interest on the various sums found to be due plaintiffs from September 15, 1960, to the date of the entry of the judgment. On September 15, 1960, the parties first met in an attempt to effect an accounting and settlement of the fees and advances owing to plaintiffs. At that time plaintiffs were in possession of a warrant made out to defendants' order in the amount of $25,015.01, which represented part of the funds from the condemnation award that had been recovered for defendants in the rescission action.

Defendants contend that they were at all times willing to pay the amounts concededly owing plaintiffs as the result of advances made by them, and such additional amount as was properly owing under the terms of the contingent fee agreement, but they argue they were prevented by plaintiffs from so doing. They assert that plaintiffs refused to accept less than the unreasonable sums demanded and further refused to permit defendants to cash the warrant and place the proceeds thereof in an account under the mutual control of the parties so that interest might be earned thereon. Should these contentions be sustained plaintiffs, of course, would not be entitled to interest prior to judgment under the express provisions of section 3287 of the Civil Code, even upon those sums to which we have found they were properly entitled.

The evidence contained in the record before us, however, is insufficient to permit any certain determination to be made on these issues. Nevertheless, the fact remains that the

warrant was not cashed and as a result both parties have been deprived of the use of the sums to which they were respectively entitled. Under these circumstances further evidence should be taken upon these issues.

Our decision makes unnecessary consideration of the point raised on plaintiffs' appeal. That appeal may therefore be dismissed.

The judgment is reversed and remanded to the trial court with directions to enter a new and different judgment in conformity with the views expressed herein. The judgment to be entered shall bear interest from the date of entry thereof. (*Snapp* v. *State Farm Fire & Cas. Co.*, 60 Cal. 2d 816 [36 Cal.Rptr. 612, 388 P.2d 884].)

Plaintiffs' appeal is dismissed.

Herndon, J., and Roth, J., concurred.

A petition for a rehearing was denied September 15, 1964, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied October 15, 1964.