[No. B022203. Second Dist., Div. Five. Nov. 8, 1988.]

ROBERT E. ALDERMAN, JR., Plaintiff, Cross-defendant and Appellant, v.
RILEY HAMILTON et al., Defendants, Cross-complainants and Appellants.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Parts II and III.

**COUNSEL**

Tony L. Cogliandro for Plaintiff, Cross-defendant and Appellant.

Sheila Donahue Miller for Defendants, Cross-complainants and Appellants.

**OPINION**

**ASHBY, J.**—Appellant, Robert E. Alderman (Alderman), attorney at law, filed suit against appellants Riley Hamilton and Gladys Hamilton (the Hamiltons) alleging the Hamiltons breached an attorney fee agreement. The Hamiltons acknowledged owing Alderman monies for services performed with regard to a will contest but denied owing additional sums. The trial court's decision was consistent with the Hamiltons' position. We affirm.

### STATEMENT OF CASE

Alderman filed a civil suit against the Hamiltons alleging that the Hamiltons breached an attorney fee agreement when the Hamiltons refused to pay

a contingency fee purportedly owed to Alderman. Alderman maintained he was hired to protect the Hamiltons' interests under the will of Leone L. Hunter in an anticipated will contest and also to perform services regarding ownership rights in property the Hamiltons held in joint tenancy with Hunter. Asserting numerous defenses, the Hamiltons claimed the fee agreement was unenforceable and denied owing the sums claimed by Alderman. The Hamiltons filed a cross-complaint alleging intentional infliction of emotional distress and abuse of process. The Hamiltons acknowledged Alderman performed services in resolving the will contest and thus he would be entitled to a contingency fee based on the value of the assets they expected to receive from Hunter's estate. However, the Hamiltons denied owing Alderman any moneys from the sale of the joint tenancy property.

After a court trial, the following judgment was entered: "[T]hat [Alderman] takes nothing under his complaint except that upon the distribution of assets to [the Hamiltons] from the Estate of Leone L. Hunter, [the Hamiltons] shall pay to [Alderman] the sum of . . . $11,361.20." It was also adjudged that the Hamiltons were the prevailing parties and thus entitled to reasonable attorney fees and costs. The Hamiltons were to take nothing under their cross-complaint.

Both parties appeal from the judgment. We affirm.

In the unpublished portions of this opinion we discuss the Hamiltons' tort claims and the prevailing party issue.

## FACTS

The Hamiltons, ages 79 and 83 at the time of the incidents involved herein, were the principal and residuary beneficiaries under the will of Leone L. Hunter. Roger Moore, Hunter's cousin, and Hunter's conservator prior to her death, was contesting the will. Prior to Hunter's death, Attorney Roger Minor had prepared Hunter's will and also had prepared a deed of trust which transferred Hunter's home to the Hamiltons and to Hunter in joint tenancy. Not being a litigator, assuming he was a potential witness in the will contest, and expecting to receive a 10 percent referral fee, Attorney Minor referred the Hamiltons to Alderman to handle the will contest.

Attorney Minor was present when Alderman first consulted with the Hamiltons on September 14, 1984. At this meeting, the parties discussed the will contest in which they anticipated Moore to allege Hunter lacked the mental capacity to properly execute the will and to allege undue influence because Attorney Minor prepared the document at the Hamiltons' direction having not met Hunter prior to its execution. The parties were also aware of

the potential that Moore would take legal action to set aside the joint tenancy deed, but knew such action probably could be prevented.

It was agreed that Alderman would handle the will contest and Attorney Minor would deal with the joint tenancy property. During the initial meeting, the parties discussed Alderman's fee for services. The fee agreement, executed at that time, described the services to be performed by Alderman as "possible defense of will contest by distant relatives and/or challenge to joint tenancy deed." In Alderman's handwriting, below the parties' signatures, the agreement showed that Alderman was to receive 75 percent of his standard $140 hourly rate plus 25 percent of any settlement or judgment, to a maximum fee of 40 percent of the funds received.

With the assistance of Attorney Minor, the Hamiltons filed a notice of death of joint tenant with regard to the joint tenancy property. On November 1, 1984, the property was sold for the net sum of $110,000. The sale was a straightforward transaction without complications. The only work Alderman did with regard to this transaction was a brief discussion with the Hamiltons' real estate broker prior to sale and a review of title and escrow documents, expending three-fourths of an hour.

On March 1, 1985, Alderman resolved the will contest through settlement. Five days later, Alderman submitted a bill to the Hamiltons requesting payment in the sum of $27,750, representing 25 percent of the net proceeds the Hamiltons received upon the sale of the joint tenancy property. Through Attorney Richard Chenoweth, the Hamiltons objected to this bill. Thereafter, Alderman filed suit for fees asserting he was retained to handle the joint tenancy property as well as the will contest. The Hamiltons acknowledged that fees were owing for work Alderman performed in resolving the will contest, but objected to paying a percentage of the joint tenancy proceeds.

## DISCUSSION

### I. BUSINESS AND PROFESSIONS CODE SECTION 6147

 Alderman contends he was entitled to a percentage of the proceeds received upon the sale of joint tenancy property. This contention lacks merit.

In determining that Alderman was not entitled to a percentage of the joint tenancy funds, the court based its decision on alternative legal theories including: (1) the Hamiltons did not hire Alderman to handle problems dealing with the joint tenancy property; (2) an agreement for a percentage

of the joint tenancy property was unconscionable; (3) the fee agreement violated Civil Code section 2235; (4) Alderman violated Rule of Professional Conduct 2-107; and (5) the fee agreement violated Business and Professions Code section 6147. Because we affirm on the ground that the fee agreement did not meet stringent statutory requirements (Bus. & Prof. Code, § 6147), we need not discuss alternative grounds. We assume, as Alderman suggests, he was hired to perform services regarding the joint tenancy property as well as the will contest. However, even if there was such an agreement, the Hamiltons were not held to the contract. The fee agreement did not follow the requirements of Business and Professions Code section 6147, and thus was voidable at the Hamiltons' option.

■ Attorney fee agreements are evaluated at the time of their making (*Houge* v. *Ford* (1955) 44 Cal.2d 706, 713 [285 P.2d 257]) and must be fair, reasonable and fully explained to the client. (Rules Prof. Conduct, rule 2-107; cf. *Hawk* v. *State Bar* (1988) 45 Cal.3d 589, 601 [247 Cal.Rptr. 599, 754 P.2d 1096].) Such contracts are strictly construed against the attorney. (*Bennett* v. *Potter* (1919) 180 Cal. 736, 740 [183 P. 156]; *Lane* v. *Wilkins* (1964) 229 Cal.App.2d 315, 323 [40 Cal.Rptr. 309].) In order to protect clients and to assure fee agreements are fair and understood by clients, the Legislature enacted numerous statutes specifically delineating the required contents of most attorney fee agreements. (Bus. & Prof. Code, §§ 6146-6148.)

Business and Professions Code section 6147 requires all contingency fee agreements be in writing[1] and mandates all of the following be included: a statement of the rate, a statement of how disbursements and costs will affect the contingency fee and the client's recovery, a statement regarding related matters, and a statement that the fee is not set by law but is negotiable.[2] If a contingency fee agreement does not comply with these requirements, it is *voidable at the option of the client* and the attorney is then entitled to a reasonable fee for services performed. (Bus. & Prof. Code, § 6147, subd. (b).)

■ The fee agreement upon which Alderman relies, and which we presume was executed by the parties, did not meet all statutory

---

[1] The 1986 amendment to Business and Professions Code section 6147 added the words "shall be in writing" to the existing statute. (Stats. 1986, ch. 475, § 6.) We reject Alderman's suggestion that prior to this amendment this statute did not require contingency fee agreements be in writing. Prior to the 1986 amendment, the statute required a written instrument as it required a copy of the agreement be given to the client and required both parties sign the document. (Stats. 1982, ch. 415, § 2, p. 1761.)

[2] A contingency fee agreement regarding health care providers has additional statutory requirements (Bus. & Prof. Code, §§ 6146, 6147) and contingency fee agreements for the recovery of workers' compensation benefits are excluded from the requirements of Business and Professions Code section 6147.

requirements.[3] While the parties' agreement did contain many of the statutory requirements, it was not complete. The agreement did not include a statement of how disbursements would affect the contingency fee; it did not discuss related matters; and it did not state that the fee was negotiable. Thus, the Hamiltons had an absolute right to void the contract before or after services were performed.

Although the Hamiltons waived their right to void the entire contract by agreeing to pay the contingency fee relating to the will contest, the Hamiltons were free to and did exercise their absolute right to void the contract provision regarding the joint tenancy property. The Hamiltons exercised this right when they denied that the contract was enforceable and refused to pay any moneys to Alderman after the sale of the real property.

Upon the court's determination that the contract did not comply with Business and Professions Code section 6147, the court followed the dictates of the statute by factually determining a reasonable fee based upon the limited amount of work Alderman expended on the joint tenancy property.

Alderman testified that before the parties executed the attorney fee agreement there were lengthy discussions regarding the fee, how the fee would be computed, and numerous mathematical illustrations computing alternative fee arrangements available to the parties. Alderman testified he had taken four pages of notes during this discussion and Alderman offered these notes into evidence. Assuming, as Alderman suggests, that these documents were business records (Evid. Code, § 1271) and the court erred in denying their admittance, this error was not prejudicial such that the outcome of this matter would be affected. (Evid. Code, § 354; Code Civ. Proc., § 475; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13.) The evidence as to the fee discussions and the contents of the notes were submitted through testimony. Alderman testified at length as to the contents of the notes and Attorney Minor confirmed Alderman's statements regarding the negotiation process.[4]

---

[3] The provisions of the contract which delineated the fee were handwritten by Alderman and appeared below the parties' signatures. There was a conflict of evidence as to whether the Hamiltons knew of and understood this fee arrangement.

[4] Attorney Minor had an interest in the litigation because he had a referral fee arrangement with Alderman in which Attorney Minor was to collect 10 percent of all fees earned by Alderman. This arrangement was not revealed nor consented to by the Hamiltons, in violation of Rule of Professional Conduct 2-108. Thus the court was free to consider Attorney Minor's testimony as biased.

II, III*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Costs on appeal are awarded to the Hamiltons.

Lucas, P. J., and Kennard, J., concurred.

---

*See footnote, *ante*, page 1033.